IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | 2:20-CR-115-Z |
| | § | |
| JEFFREY RENE LOPEZ | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS**

Defendant Jeffrey Lopez, who is charged with the offenses of Distribution and Possession with Intent to Distribute Methamphetamine, Possession with Intent to Distribute 500 Grams or More of Methamphetamine, Convicted Felon in Possession of Firearms, and Possession of Firearms in Furtherance of a Drug Trafficking Crime, moves to suppress all evidence seized in connection with the search of the vehicle Defendant Lopez was driving and his statements to law enforcement regarding that evidence. ECF No. 43.

Because neither party requested a hearing on the pending Motion to Suppress, and because the Court was able to adjudicate the relevant issues based solely on the evidence presented by Defendant Lopez and documents in the public record, the Court, in its discretion, declines to hold a hearing on Defendant's Motion and the Government's Response.[1] For the reasons that follow, the Court DENIES Defendant's Motion.

**BACKGROUND**

During a September 2, 2020 controlled purchase, Task Force Officers ("TFOs") for the Drug Enforcement Administration ("DEA") identified Defendant Jeffrey Lopez as a suspected

---

[1] *See United States v. Harrellson*, 705 F.2d 733, 737 (5th Cir. 1983)(holding evidentiary hearings are only required on a Motion to Suppress where necessary to receive an issue of fact).

source of supply of methamphetamine in the Amarillo, Texas, area. *See* Def.'s Ex. 2, ¶¶ 7-10. Following an investigation, TFO Randy Mincher confirmed Defendant Lopez resided at 719 N Wilson in Amarillo and drove a black 2020 Nissan Altima displaying Texas temporary registration 84386D7. *Id.* at ¶ 8.

On October 21, 2020, TFOs conducted a controlled purchase of methamphetamine from Defendant Lopez using a Confidential Informant. *Id.* at ¶ 11. DEA Agents and officers from the Amarillo Police Department's Narcotics Unit met with the Confidential Informant prior to the transaction. During that meeting, the Confidential Informant identified Defendant Lopez as a methamphetamine dealer. *Id.* TFOs then provided the Confidential Informant money to purchase two ounces of methamphetamine from Defendant Lopez at the 719 N Wilson residence. *Id.* Surveilling officers observed Defendant Lopez sell the Confidential Informant one ounce of methamphetamine and heard Defendant Lopez tell the Confidential Informant he would have to retrieve the second ounce from another location on 7th Street. *Id.* TFOs observed Defendant Lopez leave the N Wilson residence and drive to another residence at 1536 SE 7th, which law enforcement previously identified as the home of Defendant Lopez's brother. *Id.* at ¶¶ 11-12. Defendant Lopez spent approximately 15 minutes inside 1536 SE 7th, returned to his Black Nissan Altima, and phoned the Confidential Informant. *Id.* at ¶ 12. Lopez and the Confidential Informant arranged to complete the transaction at a laundromat on Wichita Avenue. *Id.* at ¶ 13. The Confidential Informant released the two ounces to TFOs. *Id.* The substance later tested positive for the presence of methamphetamine. *Id.* at ¶ 14. During a de-brief, the Confidential Informant also informed officers that Defendant Lopez had a separate bag of two to three ounces of methamphetamine and several firearms inside of the 719 N Wilson residence. *Id.*

On November 3, 2020, based on law enforcement's observation of the October 21, 2020 controlled purchase, United States Magistrate Judge Lee Ann Reno issued search warrants for the residences at 719 N Wilson and 1536 SE 7th as well as a complaint and arrest warrant for Defendant Lopez. *See* Def.'s Exhibits 2, 3, and 2:20-mj-167, ECF Nos. 1 and 14.

On November 5, 2020, two days after Magistrate Judge Reno issued the warrants and the complaint, TFO Jeremy Hoffman received information from the same Confidential Informant who completed the October 21, 2020 controlled purchase that Defendant Lopez was traveling to California to retrieve a suspected load of methamphetamine.[2] *See* Def.'s Ex. 1 at 1. TFO Hoffman presented this information to Magistrate Judge Reno, who issued a search warrant for location data associated with Defendant Lopez's cellular telephone on November 6, 2020. On November 12, 2020, TFO Hoffman was monitoring the location data for Defendant Lopez's phone and noticed Defendant Lopez was traveling east from California towards Amarillo. *Id.* Based on TFO Hoffman's observations, DEA agents planned to stop of Defendant Lopez on his return trip to Texas and the execution of the two search warrants on 719 N Wilson and 1536 E 7th after arresting him. *Id.* at 1-2.

On November 13, 2020, DEA agents located the black Nissan Altima belonging to Defendant Lopez near Tucumcari, New Mexico, and attempted to follow the vehicle but were unsuccessful. *Id.* at 2. Texas Department of Public Safety ("DPS") troopers stopped the black Nissan on Interstate 40 near Vega, Texas, and arrested Defendant Lopez under the federal warrant. *Id.* Following the arrest, DPS Trooper Rocky Rancour transported Defendant Lopez to Oldham County Jail. *Id.*

---

[2] The Court bases its determination that the Confidential Informant who completed the October 21, 2020, controlled purchase and the Confidential Informant who informed TFO Hoffman that Defendant Lopez was travelling to California not on the filings of either party, but rather on TFO Hoffman's Application for a Search Warrant for the location data of Defendant Lopez's cellular telephone. *See* 2:20-mj-176, ECF No. 1.

3

Bodycam video of Defendant Lopez's arrest depicts Trooper Rancour informing Defendant Lopez that he is under arrest pursuant to a federal warrant. Def.'s Ex. 4 at 12:35. Defendant Lopez asked Trooper Rancour "what did I do," to which Trooper Rancour responded "I don't know. It's up to the DEA. I'm just here to drive you." *Id.* Once Trooper Rancour secured Defendant Lopez in the vehicle, he informed Police Dispatch of the following: (1) that Defendant Lopez had a DEA warrant out for his arrest; (2) that DEA agents were "with him" at the scene and following him to Oldham County Jail; and (3) that another officer would drive the Nissan Altima to the Jail. *Id.* at 17:35.

Upon arriving at Oldham County Jail, Trooper Rancour spoke with two DEA agents, who informed Trooper Rancour that the DEA received a tip that Defendant Lopez had gone to California to "pick up a load" and that TFOs intended to stop him on the return trip to Amarillo with the drugs in the vehicle. *Id.* at 25:12. Following that conversation, Trooper Rancour searched Defendant's vehicle and discovered two bundles of a crystalline substance with the appearance and consistency of methamphetamine inside of the spare tire. *Id.* at 38:28. TFO Hoffman described the search as a "probable cause search of the vehicle" on page four of his incident report. Def.'s Ex. 1 at 4. The crystalline substance later field-tested positive for methamphetamine. *Id.* at 3-4. During an interview with TFOs Hoffman and Mincher, Defendant Lopez agreed to waive his *Miranda* rights and admitted to knowledge about the two bundles of drugs located in the spare tire of his vehicle. *Id.* at 2.

On April 2, 2021, Defendant Lopez filed this Motion to Suppress both the methamphetamine and his statements to TFOs Hoffman and Mincher.

## LEGAL STANDARD

Under the Fourth Amendment, "[w]arrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions." *See Rountree v. Lopinto*, 976 F.3d 606, 609 (5th Cir. 2020) (quoting *State v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002)). Among those exceptions, and relevant here, is the "automobile exception," which permits law enforcement to search a vehicle without a warrant where officers have probable cause to believe the vehicle holds contraband. *United States v. Fields*, 456 F.3d 519, 523 (5th Cir. 2006). Further, where probable cause justifies the search of a lawfully stopped vehicle, "it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *California v. Acevedo*, 500 U.S. 565, 570 (1991).

Probable cause exists where a reasonably prudent person could believe, based on the facts and circumstances, that the vehicle contains contraband. *See United States v. Hooker*, 416 Fed.Appx. 467, 471 (5th Cir. 2011)(quoting *Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (*per curiam*). The officer conducting the search need not have personal knowledge of all of the facts giving rise to probable cause, so long as he is acting at the request of those who have the necessary information. *United States v. Kye Soo Lee*, 962 F.2d 430, 435 (5th Cir. 1992). Instead, "probable cause can rest upon the *collective knowledge* of the police" where "there is some degree of communication" between officers. *Id.*

Although "[a] defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional[,] ... where a police officer acts without a warrant, the government bears the burden of proving that the search was valid." *See United States v. Walsh*, No. 2:17-CR-023-D, 2017 WL 3702018, at *4 (N.D. Tex. Aug. 28, 2017) (Fitzwater, J.) (citing *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005)).

ANALYSIS

Defendant argues that Trooper Rancour's warrantless search of his vehicle violated his Fourth Amendment rights. Specifically, Defendant contends that none of the DEA search warrants covered a search of Defendant's Nissan Altima in the vicinity of Vega, Texas, some thirty miles to the west of the residences located at 719 N Wilson or 1536 SE 7th. ECF No. 43 at 1-2. Further, Defendant asserts that Trooper Rancour's search does not fall within an exception to the Fourth Amendment warrant requirement. *Id.* at 3-4. Defendant highlights Trooper Rancour's statement that Trooper Rancour did not know the factual basis for Defendant's arrest warrant to suggest Trooper Rancour lacked probable cause for a search.[3] *Id.* As a result, Defendant asks for the suppression of both the 1,785.6 net grams of methamphetamine seized from his vehicle and Defendant's subsequent statements to law enforcement relating to that evidence. *Id.*

The Government contends that Trooper Rancour had probable cause to search Defendant's vehicle under the collective knowledge doctrine and, as a result, the automobile exception to the Fourth Amendment warrant requirement applies. ECF No. 48 at 6-10. Alternatively, the Government argues that the inventory exception also supported the search of Defendant's vehicle. *Id.* at 10-12.

**A. The Automobile Exception**

The Government proved by a preponderance of the evidence that the automobile exception to the Fourth Amendment permitted Trooper Rancour to search Defendant Lopez's vehicle without a warrant. Under the automobile exception, law enforcement may search every part of a vehicle and its contents that may conceal the object of the search where they have probable cause to believe

---

[3] Defendant's briefing addresses the *Terry v. Ohio*, 392 U.S. 1 (1968), exception, the consent exception, and the search incident to a lawful arrest exception covered in *Arizona v. Gant*, 556 U.S. 332 (2009). However, Defendant's Motion to Suppress does not address (1) the automobile exception or (2) the collective knowledge doctrine.

6

the vehicle contains contraband. *Acevedo*, 500 U.S. at 570. Probable cause to search exists where a reasonably prudent person could believe, based on the facts and circumstances, that the vehicle contains contraband. *Dyson*, 527 U.S at 467. The officer conducting the search need not have personal knowledge of all of the facts giving rise to probable cause, so long as he is acting at the request of those who have the necessary information. *Kye Soo Lee*, 962 F.2d at 435. Here, DEA Agents and DPS Troopers possessed probable cause to believe the vehicle contained contraband for two reasons: (1) the statements of a reliable Confidential Informant independently corroborated by law enforcement and (2) the DEA Agents own knowledge that Defendant Lopez conducted drug transactions from the same black Nissan.

On November 5, 2020, TFO Hoffman received information from a credible and reliable Confidential Informant that Defendant Lopez had traveled from Amarillo to California to pick up a load of methamphetamine. TFO Hoffman knew the Confidential Informant to be reliable because the same individual recently purchased methamphetamine from Defendant Lopez at the request of law enforcement on October 21, 2020. Further, TFO Hoffman independently corroborated the Confidential Informant's statement by obtaining a warrant for the location data of Defendant Lopez's cellular telephone and confirming that Defendant Lopez was, indeed, in California. While the totality-of-the-circumstances determination of probable cause does not require independent corroboration of a known Confidential Informant's statement, such corroboration does confirm the veracity of the Informant's statements. *See United States v. Blount*, 123 F.3d 831, 836 (5th Cir. 1997) (holding the "totality of the circumstances" approach to probable cause does not require that all tips be corroborated by subsequent police investigation in order to be considered credible); *see also United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994) (stating that Courts must consider

the totality of the circumstances in finding probable cause which involves evaluating the veracity, reliability, and basis of knowledge of a confidential informant's tip to law enforcement.

In addition to the tip from the Confidential Informant, DEA Agents knew that Defendant Lopez conducted drug transactions from the black Nissan Altima because they had seen him do so during the October 21, 2020 controlled purchase.

Finally, Defendant's contention that Trooper Rancour lacked personal knowledge of all of the facts giving rise to probable cause is immaterial because probable cause rested upon the collective knowledge of the law enforcement officials involved. *See Kye Soo Lee*, 962 F.2d at 435. Here, there was at least "some degree of communication" between Trooper Rancour and the DEA Agents present at Oldham County jail. *Id.* Prior to the search of the vehicle, bodycam video shows DEA Agents informing Trooper Rancour that a source informed them that Defendant Lopez was travelling from California to Amarillo with a load of methamphetamine. Therefore, the collective knowledge principle imputes the information known to those DEA agents to Trooper Rancour.

For the foregoing reasons, the Court FINDS that law enforcement officers had probable cause based on the Confidential Informant's tip and their personal knowledge of Defendant Lopez conducting drug transactions from the black Nissan.

### B. Inventory Exception

The Government also contends the warrantless search was valid under the inventory exception to the Fourth Amendment warrant requirement. Because the Court determined the automobile exception applies, it need not analyze the application of the inventory exception.

CONCLUSION

Accordingly, the Court DENIES Defendant's Motion to Suppress. The Clerk of Court is respectfully directed to close ECF No. 43.

**SO ORDERED.**

April 9, 2021.

_____
MATTHEW KACSMARYK
UNITED STATES DISTRICT JUDGE